UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
HARLEYSVILLE PREFERRED
INSURANCE COMPANY,

                     Plaintiff,

v.

ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY, et al.,

                     Defendants.
-------------------------------------------------------X

**MEMORANDUM OPINION
AND ORDER**

18-CV-08306 (PMH)

PHILIP M. HALPERN, United States District Judge:

Plaintiff Harleysville Preferred Insurance Company ("Harleysville") brings this action for a declaratory judgment against Defendants Allstate Property and Casualty Insurance Company ("Allstate"), Sun Dal Kim ("Kim"), Sun Kim Cleaners, Inc. ("Cleaners"), and Il Whan Kho ("Kho") seeking a declaration that it has no duty to defend or indemnify Kim or Cleaners in the underlying state court action entitled *Kho v. Sun Kim, et al.*, pending in the Supreme Court of the State of New York, Westchester County, under Index Number 55408/2017 (the "Underlying Action"). Harleysville also seeks a declaration that it has no legal obligation to reimburse Kim or Cleaners for any damages, costs, expenses and/or attorneys' fees incurred in the Underlying Action. (Doc. 2, "Compl."). Harleysville seeks further a declaration that Allstate has a duty to defend and indemnify Kim and Cleaners in the Underlying Action; and finally, that Allstate is required to reimburse Harleysville for attorneys' fees and costs incurred by Harleysville in the Underlying Action.

Before the Court are motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 filed by Harleysville (Doc. 28; Doc. 28-1, "Harleysville Br.") and Allstate (Doc. 30;

Doc. 33, "Allstate Br.").[1] For the reasons set forth below, Harleysville's motion is DENIED and Allstate's motion is GRANTED.

**<u>BACKGROUND</u>**

The facts, as recited below, are taken from Harleysville's Complaint, its Local Civil Rule 56.1 Statement (Doc. 28-2, "Harleysville 56.1 Stmt."), Allstate's Local Civil Rule 56.1 Statement (Doc. 30-1, "Allstate 56.1 Stmt."), and the admissible evidence submitted by the parties.

I.     <u>The Underlying Action</u>

On or about April 18, 2017, Kho filed the Underlying Action seeking to recover for personal injuries allegedly sustained while on the premises owned and maintained by Kim and Cleaners. (Compl. ¶ 13; Harleysville 56.1 Stmt. ¶ 12; Allstate 56.1 Stmt. ¶¶ 11-14; Doc. 28-5, "Kalik Cert." Ex. D, "State Compl."). Kho alleged in the Underlying Action that his injuries were caused by the negligence of Kim and Cleaners in their ownership, operation, management, supervision, maintenance, and control of the subject premises. (State Compl. ¶ 22).

Kim and Kho testified at their depositions in the Underlying Action that the accident occurred in connection with the acquisition of a "pressing machine" for use in Kim's business, the Cleaners. (Harleysville 56.1 Stmt. ¶¶ 1-2; Allstate 56.1 Stmt. ¶¶ 40-46; Kalik Cert. Ex. A, "Kim Dep." at 15:21-24, 19:18-20, 20:13-21:15, 22:23-23:11; *id*. Ex. B, "Kho Dep." at 27:21-29:16). On February 28, 2017, Kim and Kho traveled to Fort Lee, New Jersey, in Kim's 2009 Xterra— with a trailer attached by hitch—to pick up the pressing machine, and drove it back to the Cleaners' store. (Harleysville 56.1 Stmt. ¶¶ 2-4; Kim Dep. at 15:21-24, 20:13-21:15, 21:24-23:11; Kho Dep. at 27:21-29:16, 33:3-7). When Kim and Kho returned to the Cleaners' location in Yorktown

---

[1] Allstate first filed a motion for summary judgment on May 11, 2020 (Doc. 29), but subsequently filed an amended motion on the same date (Doc. 30), which amended motion the Court considers herein. Citations to the parties' briefs and exhibits correspond to the pagination generated by ECF.

Heights, New York, Kim parked his vehicle with the trailer attached at the rear door of the store, whereupon Kim and Kho exited the vehicle. (Harleysville 56.1 Stmt. ¶¶ 4-6; Kim Dep. at 23:9-15; Kho Dep. 33:3-35:10). Kim testified that he told Kho "to get out of the way before [he] unhitched the trailer from the car because [he] knew that the machine might topple over." (Kim Dep. at 27:7-10). Kim testified further that "after [he] made sure that Mr. Kho moved out of the way, [he] *unhitched the trailer, and then the accident occurred*." (*Id*. at 27:10-12) (emphasis added). The machine fell, Kho's left leg was injured, and an ambulance was called to the scene. (*Id*. at 28:3-30:11).

Harleysville defended Kim and Cleaners in the Underlying Action under a reservation of rights. (Harleysville 56.1 Stmt. ¶ 13 (citing Kalik Cert. Ex. N)). On or about September 21, 2017, Harleysville provided Allstate with notice of the claim and the Underlying Action. (*Id*. ¶ 14; Allstate 56.1 Stmt. ¶ 26). On or about November 16, 2017, Allstate issued a disclaimer letter, denying and disclaiming liability under its policy of insurance. (Doc. 32-4).

II.    The Policies

A.    The Harleysville Policy

Harleysville issued a Businessowners Policy to Cleaners (the "Harleysville Policy") for a policy period from July 28, 2016 to July 28, 2017. (Harleysville 56.1 Stmt. ¶ 10 (citing Kalik Cert. Ex. E, "H. Pol.")). The "[a]vailable liability limits are $2 Million occurrence with a $4 Million aggregate" (Kalik Cert. Ex. N at 3),  in connection with coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies. [Harleysville] will have the right and duty to defend the insured against any 'suit' seeking those damages." (*Id*.; H. Pol. at 115). As

3

is relevant to the instant motion and this action, the Harleysville Policy contains the following

exclusion:

> B. Exclusions
> 1. Applicable to Business Liability Coverage
> This insurance does not apply to:
> . . .
> g.    "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".
>
> This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

(H. Pol. at 100 (emphasis omitted)).  The Harleysville Policy defines "auto" as follows:

> 2. "Auto" means:
> a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or
> b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged.
> However, "auto" does not include "mobile equipment".

(*Id*. at 107). The Harleysville Policy further defines "loading and unloading" as follows:

> 11. "Loading or unloading" means the handling of property:
> a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";
> b. While it is in or on an aircraft, watercraft or "auto"; or
> c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;
> but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

(*Id*. at 108).

4

B.  <u>The Allstate Policy</u>

Allstate issued an Auto Policy to Kim and Jaesun Kim (the "Allstate Policy") for a policy period from January 10, 2017 to July 10, 2017. (Allstate 56.1 Stmt. ¶ 22; Harleysville 56.1 Stmt. ¶ 11; Doc. 31-7, "Berberich Decl." Ex. G, "A. Pol.").

The Allstate Policy provides, in relevant part, as follows:

> Part I – Automobile Liability Insurance
> Bodily Injury – Coverage AA
> Property Damage – Coverage BB
> We will pay for all damages an insured person is legally obligated to pay – because of bodily injury or property damage meaning:
> (1)      bodily injury, sickness, disease or death to any person, including loss of services; and
>
> (2)      damage to or destruction of property, including loss of use.
>
> Under these coverages, your policy protects an insured person from claims for accidents arising out of the ownership, maintenance or use, loading or unloading of an insured auto.

(A. Pol. at 23 (emphasis omitted)). Thus, for coverage to apply under the Allstate Policy, the accident must arise out of the ownership, maintenance, use, loading or unloading of an auto; and the auto must be an "insured auto" as defined in the Allstate Policy. Under the Allstate Policy, an "insured auto" is defined as follows:

> Insured Autos
> (1) Any auto described on the Policy Declarations. This includes the four wheel private passenger auto or utility auto you replace it with.
>
> (2) An additional four wheel private passenger auto or utility auto you become the owner of during the premium period. This auto will be covered if we insure all other private passenger autos or utility autos you own. You must, however, tell us within 60 days of acquiring the auto. You must pay any additional premium.
>
> (3) A substitute four wheel private passenger auto or utility auto, not owned by you or a resident, being temporarily used while your insured auto is being serviced or repaired, or if your insured auto is stolen or destroyed.

(4) A non-owned auto used by you or a resident relative with the owner's permission. This auto must not be available or furnished for the regular use of an insured person.

(5) A trailer while attached to an insured auto. The trailer must be designed for use with a private passenger auto or utility auto. This trailer can't be used for business purposes with other than a private passenger auto or utility auto.

(*Id*. at 24 (emphasis omitted)).

III.    <u>The Instant Action and Motions for Summary Judgment</u>

Harleysville commenced the instant action on September 12, 2018 contending that the Harleysville Policy's exclusion applies to bar coverage for the injuries allegedly sustained by Kho "arising out of the ownership, maintenance or use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and 'loading and unloading.'" (Compl. ¶ 19). Harleysville alleges that discovery in the Underlying Action revealed that the injuries claimed by Kho occurred "during the unloading process of an auto," and thus, it is not obligated to defend or indemnify Kim and Cleaners for the claims asserted in the Underlying Action. (*Id*. ¶¶ 21-22). Harleysville presses three claims for relief and seeks the following declarations: (1) Harleysville may terminate the defense that it has thus far provided to Kim and Cleaners in the Underlying Action; (2) Harleysville has no duty to indemnify Kim or Cleaners for any settlement, judgment, or payment rendered against or required by Kim or Cleaners in the Underlying Action; (3) Allstate is obligated to defend and indemnify Kim and Cleaners on a primary basis for the claims asserted in the Underlying Action; (4) Harleysville is entitled to reimbursement from Allstate for all defense costs expended on behalf of Kim and Cleaners; and (5) Harleysville is entitled to reasonable counsel fees and the costs of suit incurred in bringing this action. (*Id*. at 7-8).

On October 22, 2018, Allstate answered, denying the salient allegations of the Complaint and asserting nine affirmative defenses. (Doc. 15, "Ans."). Notably, Allstate pled no counterclaim of any sort. On December 3, 2018, Kim and Cleaners answered the Complaint, interposing a counterclaim against Harleysville and a cross-claim against Allstate, seeking reimbursement for costs and attorneys' fees incurred by them in defending the instant declaratory judgment action. (Doc. 19). Allstate answered the cross-claim on December 12, 2018, again without asserting any claims for relief (Doc. 20), and Harleysville answered the counterclaim on December 19, 2018 (Doc. 21).

On August 19, 2019, following the exchange of Federal Rule of Civil Procedure 26 initial disclosures and obtaining discovery concerning the Underlying Action, Harleysville sought leave to file a motion for summary judgment. (Doc. 24). On August 28, 2019, Allstate sought permission to file its own summary judgment motion. (Doc. 25). On December 19, 2019, Harleysville renewed its request for a pre-motion conference in connection with its anticipated summary judgment motion, advising that trial in the Underlying Action was stayed pending resolution of the instant coverage action. (Doc. 26). On April 3, 2020, this action was reassigned to this Court from Judge Román, and the Court issued an Order granting the parties' requests to file motions for summary judgment. (Doc. 27). On May 11, 2020, Harleysville and Allstate filed their motions for summary judgment. (Docs. 28-33).[2]   On May 26, 2020, Harleysville and Allstate filed their opposition papers (Docs. 33-34, 37-38), and Kim and Cleaners filed an attorney affirmation "in partial

---

[2] Federal Rule of Civil Procedure 56 permits a motion for summary judgment where the movant identifies "each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Federal Rule of Civil Procedure 7 requires that motion must "state with particularity the grounds" therefor and "state the relief sought." Fed. R. Civ. P. 7(b)(1). Although it is not clearly stated in Allstate's Notice of Motion or Memorandum of Law in Support, thus running afoul of Rules 7 and 56, Allstate seeks summary judgment on its Affirmative Defenses (Ans. ¶¶ 41-48) and/or an order dismissing Harleysville's claims for relief. Although Allstate indicates in its briefing that it requests a declaratory judgment on its motion for summary judgment, it has not brought a claim for such relief in this action.

opposition" to the motions, seeking reimbursement for legal fees and costs incurred in having to appear and defend this action (Doc. 36). On June 9, 2020, after seeking and obtaining the Court's leave to respond to the opposition filed by Kim and Cleaners, Harleysville and Allstate filed reply papers. (Docs. 43, 45).

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F. Supp. 3d 714, 722 (S.D.N.Y. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-5486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id*. (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence; the task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial . . . ." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)). Claims simply cannot proceed in the absence of sufficient proof as to an essential element.

"It is the movant's burden to show that no genuine factual dispute exists," *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)), and a court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 442 F. Supp. 3d at 722 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts. . . ." *Id.* (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, "[i]f there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its "entitlement to judgment as a matter of law." *In re Davis New York Venture Fund Fee Litig.*, 805 F. App'x 79, 80 (2d Cir. 2020) (quoting *FIH, LLC v. Found. Capital Partners LLC*, 920 F.3d 134, 140 (2d Cir. 2019)). Stated simply, the movant must establish that the law favors the judgment sought. *Gonzalez v. Rutherford Corp.*, 881 F. Supp. 829, 834 (E.D.N.Y. 1995) (explaining "that summary judgment is appropriate only when . . . law supports the moving party"); *Linares v. City of White Plains*, 773 F. Supp. 559, 560 (S.D.N.Y. 1991) (summary judgment is appropriate when "the law so favors the moving party that entry of judgment in favor of the movant . . . is proper"). This standard applies equally to claims for relief and affirmative defenses. *Giordano v. Market*

*Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010) ("The same standard applies whether summary judgment is granted on the merits or on an affirmative defense . . . .").

## ANALYSIS

I.    Duty to Defend and Indemnify

"[U]nder New York law, 'the insurer's duty to furnish a defense is broader than its obligation to indemnify.'" *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 620 (2d Cir. 2001) (quotation marks omitted) (quoting *Seaboard Sur. Co. v. Gillette Co.*, 476 N.E.2d 272, 275 (N.Y. 1984)); *see also Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79, 82 (2d Cir. 2006) ("The 'exceedingly broad' contours of an insurer's duty to defend have been articulated clearly and repeatedly by the New York Court of Appeals." (citation omitted)); *Atl. Mut. Ins. Co. v. Terk Techs. Corp.*, 763 N.Y.S.2d 56, 61 (App. Div. 2003) ("The duty of an insurer to provide a defense for its insured is distinct from, and far broader than, its duty to indemnify." (citations omitted)). If any allegations in the complaint "fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be," an insurer must defend. *Seaboard*, 476 N.E.2d at 275 (citation omitted). The duty to defend "perdures until it is determined *with certainty* that the policy does not provide coverage." *Hugo Boss*, 252 F.3d at 620 (emphasis in original).

"While the insurer's burden is a heavy one, the court should not impose a duty to defend on an insurer through a strained, implausible reading of the complaint that is linguistically conceivable but tortured and unreasonable." *Atl. Mut.*, 763 N.Y.S.2d at 62 (citation and quotation marks omitted). However, "a defense obligation may be avoided only where there is 'no possible factual or legal basis' on which an insurer's duty to indemnify under any provision of the policy could be held to attach." *Century 21*, 442 F.3d at 82-83 (quoting *Servidone Constr. Corp. v. Sec.*

*Ins. Co. of Hartford*, 477 N.E.2d 441, 444 (N.Y. 1985)); *see also Hotel Des Artistes v. Transam. Ins. Co.*, No. 93-CV-4563, 1994 WL 263429, at *3 (S.D.N.Y. June 13, 1994) ("An insurer seeking to avoid its duty to defend bears a heavy burden which, in practice, is rarely met." (citation omitted)). "Further, if an insurer asserts that coverage should be denied based on an exclusion clause, 'the burden rests upon the insurance company to demonstrate that the allegations of the complaint can be interpreted only to exclude coverage.'" *Great Am. Ins. Co. v. Houlihan Lawrence, Inc.*, 449 F. Supp. 3d 354, 365 (S.D.N.Y. 2020) (citing *Atl. Mut.*, 763 N.Y.S.2d at 62).

"To determine if a defense obligation exists, courts compare the allegations of the complaint to the terms of the policy." *Bridge Metal Indus., L.L.C. v. Travelers Indem. Co.*, 812 F. Supp. 2d 527, 535 (S.D.N.Y. 2011) (quoting *A. Meyers & Sons Corp. v. Zurich Am. Ins. Grp.*, 545 N.E.2d 1206, 1208 (N.Y. 1989) (internal quotation marks omitted)), *aff'd*, 559 F. App'x 15 (2d Cir. 2014); *see also Accessories Biz, Inc. v. Linda & Jay Keane, Inc.*, 533 F. Supp. 2d 381, 386 (S.D.N.Y. 2008) (same). "If the facts alleged raise a reasonable possibility that the insured may be held liable for some act or omission, then the insurer must defend." *A. Meyers*, 545 N.E.2d at 1208 (citation omitted); *see also Atl. Mut.*, 763 N.Y.S.2d at 61 ("An insurer's duty to defend is triggered whenever allegations set forth in a complaint state a cause of action that gives rise to a reasonable possibility of recovery under the policy." (citations omitted)). "Conversely, if the allegations interposed in the underlying complaint allow for no interpretation which brings them within the policy provisions, then no duty to defend exists." *Id*. at 61-62 (citations omitted). "The insurer's duty to defend the entire action is triggered even if only one claim is potentially covered by the insurance policy." *Mass. Bay Ins. Co. v. Penny Preville, Inc.*, No. 95-CV-4845, 1996 WL 389266, at *4 (S.D.N.Y. July 10, 1996) (citing *Seaboard*, 476 N.E.2d at 274); *see also GRE Ins. Grp. v. GMA Accessories, Inc.*, 691 N.Y.S.2d 244, 247 (Sup. Ct. 1988) ("[A]n insurer must defend against

an entire action even if only one claim potentially falls within the indemnity coverage of the policy." (citation omitted)).

When considering coverage issues, allegations in the complaint are not necessarily the "*sole* criteria for measuring the scope of th[e] duty [to defend]." *Fitzpatrick v. Am. Honda Motor Co., Inc.*, 575 N.E.2d 90, 92 (N.Y. 1991) (emphasis in original). Thus, "the insurer [is required also] to provide a defense when it has actual knowledge of facts establishing a reasonable possibility of coverage." *Id.* at 93 (citation and footnote omitted). New York courts likewise consider extrinsic evidence when that evidence conclusively establishes that an insurer faces no possible liability under its policy. *See Avondale Indus. Inc. v. Travelers Indem. Co.*, 774 F. Supp. 1416, 1424-25 (S.D.N.Y. 1991) (collecting cases); *Burt Rigid Box. Inc, v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 97 (2d Cir. 2002).

Moreover, "[i]n interpreting the insurance policy, the ordinary rules of contractual interpretation apply." *Mass. Bay*, 1996 WL 389266, at *5. "If a relevant term is not defined in the policy, it is to be afforded its ordinary meaning, which may include its usage in federal law; and, again, any ambiguity must be resolved in favor of the insured." *Houlihan Lawrence, Inc.*, 449 F. Supp. 3d at 366 (internal alterations and citations omitted).

A. <u>Harleysville Policy</u>

Harleysville, in arguing that coverage should be denied based upon the exclusion set forth in the Harleysville Policy, relies on the "completed operations" doctrine to analyze whether the accident arose out of the "loading or unloading" of a covered vehicle. (Harleysville Br. at 18-22). The common law "completed operations" doctrine states that "loading and unloading" encompasses not just the actual transference of goods to and from the vehicle, but the "'complete operation' of transporting the goods between the vehicle and the place from or to which they are

12

being delivered." *Wagman v. Am. Fidelity & Cas. Co.*, 109 N.E.2d 592, 594 (N.Y. 1952). Harleysville argues that under this doctrine, the loading and unloading of the vehicle includes all acts that were integral to the loading and unloading process: The accident arose out of the unloading of the machine from Kim's vehicle and therefore the auto exclusion applies to bar coverage. (Harleysville Br. at 21-22). The Court disagrees.

As an initial matter, the "completed operations" doctrine applies only to situations involving a vehicle that is specifically insured for the transport of goods commercially, and when the injuries at issue arise out of such use. *Senia v. Gov't Emp. Ins. Co.*, 381 N.Y.S.2d 376, 377 (App. Term 1975); *Wagman*, 109 N.E.2d at 594 (doctrine applies to "commercial pickups and deliveries"). There is no evidence in the record to indicate that the 2009 Xterra and the trailer were commercial vehicles specifically insured for the transport of goods. Importantly, nothing in the record suggests that Kim and Kho were unloading the pressing machine or handling the property when the accident occurred. Rather, the admissible evidence in the record reflects that the 2009 Xterra and trailer were parked and stationary at the time of the accident (Harleysville 56.1 Stmt. ¶¶ 4-6; Kim Dep. at 23:9-15; Kho Dep. 33:3-35:10); and the accident occurred in connection with and after unhitching the trailer from the Xterra (Kim Dep. at 27:7-10-12; 28:3-30:11).

Moreover, the complaint in the Underlying Action does not contain any allegations that a motor vehicle was involved in causing Koh's alleged injuries; rather, as set forth above, it alleges that Kim and Cleaners were negligent in "their ownership, operation, management, supervision, maintenance and control *of the [subject] premises*." (State Compl. ¶ 22 (emphasis added)). These allegations are the type that would typically be covered by a businessowners' policy, such as the Harleysville Policy. Because the Harleysville Policy requires coverage for suits against the insured such as the Underlying Action, and Harleysville has not met its burden to establish that the

exclusion applies, it is required to defend. Accordingly, Harleysville's motion for summary judgment seeking declarations that it may terminate the defense that it has thus far provided to Kim and Cleaners in the Underlying Action and that it has no duty to indemnify Kim or Cleaners for any settlement, judgment, or payment rendered against or required by Kim or Cleaners in the Underlying Action, is denied.

B. Allstate Policy

With respect to coverage under the Allstate Policy, the accident alleged in the Underlying Action simply did not arise out of the "ownership, maintenance or use, loading or unloading of an insured auto." (*See* A. Pol. at 23). It cannot be disputed that Kho's complaint in the Underlying Action is devoid of any allegation that Kim and Cleaners used the insured vehicle negligently; and sworn testimony in the record reveals that at the time of the accident the insured vehicle and trailer were parked—the operation of the auto had ceased at the time of the accident alleged in the Underlying Action. (Harleysville 56.1 Stmt. ¶¶ 4-6; Kim Dep. at 23:9-15; Kho Dep. 33:3-35:10).

To establish coverage under the Allstate Policy, it must be demonstrated that the accident resulted from "some act or omission related to the use" of the insured vehicle. *Eagle Ins. Co. v. Butts*, 707 N.Y.S.2d 115, 117 (App. Div. 2000). In *Butts*, the plaintiff was injured when she was leading a horse down a ramp attached to a van. *Id*. at 116. Like here, the court in *Butts* was asked to determine whether coverage was provided by a businessowners' policy or a personal auto policy. *Id*. The New York State Appellate Division upheld the auto insurers' disclaimer of coverage, explaining that since "there were no allegations [in the underlying personal injury action] that the [insured] used the [insured auto] negligently or that the condition of the [insured auto] in any way contributed to the accident" but rather only allegations that the insured's "acts or omissions involved her prior training of the horse," the auto insurer was not required to defend or

indemnify the horse owner in the underlying action. *Id*. at 117; *see also Coughlan v. Turner Const. Co.*, 745 N.Y.S.2d 164 (App. Div. 2002) (auto liability coverage did not apply where there was no showing that any negligent use of insured auto caused the subject injury).

Equally persuasive is the undisputed and admissible evidence in this record which reveals that the trailer was unhitched from the vehicle at the time of the accident. (Kim Dep. at 27:7-12). Thus, the trailer was not insured by Allstate at the time the machine fell from the trailer causing Koh's alleged injuries. (*See* A. Pol. at 24). Accordingly, that branch of Harleysville's motion for summary judgment seeking a declaration that Allstate is obligated to defend and indemnify Kim and Cleaners on a primary basis for the claims asserted in the Underlying Action is denied. Separately, Allstate's motion for summary judgment on its affirmative defenses that Allstate has no duty to defend or indemnify Kim and Cleaners in the Underlying Action is granted.

II.   Reimbursement for Defense Costs and Attorneys' Fees

Harleysville also seeks a declaration that it is entitled to reimbursement from Allstate for defense costs and attorneys' fees incurred to date in connection with its defense of Kim and Cleaners in the Underlying Action.  Harleysville's argument for reimbursement (Harleysville Br. at 24) necessarily requires that the Court find that there is no coverage obligation under the Harleysville Policy. *See Valley Forge Ins. Co. v. ACE Am. Ins. Co.*, 74 N.Y.S.3d 596, 598 (App. Div. 2018). Harleysville's request for reimbursement, in light of the Court's determinations herein, must be denied.

As regards the request for reimbursement of the costs and attorneys' fees incurred by Kim and Cleaners in this action, there is no motion properly before the Court that would permit such relief. Kim's and Cleaner's request for attorneys' fees was made in opposition to the motions for summary judgment. (Doc. 36). Neither Kim nor Cleaners sought or were granted leave to move

for summary judgment on their counterclaim or cross-claim; and neither made a formal motion for such relief. Indeed, recognizing their request was not properly before the Court, Kim and Cleaners filed a letter encouraging the Court to accept and consider their request "for the sake of judicial economy" but failed to provide any support for such proposition. (Doc. 44). "[T]h[is type of] cross motion is procedurally improper and is denied on that basis and without regard to its merits." *Sbarra v. Port Auth. of N.Y. & N.J.*, No. 10-CV-8580, 2011 WL 4344078, at *8 (S.D.N.Y. Sept. 9, 2011); *see also* Fed. R. Civ. P. 7(b) ("A request for a court order must be made by motion." ); *Keesh v. Quick*, No. 19-CV-08942, 2021 WL 639530, at *12 (S.D.N.Y. Feb. 17, 2021) (request for sanctions made in opposition brief held defective and thus denied); *Corr. Officers Benevolent Ass'n of Rockland Cty. v. Kralik*, No. 04-CV-2199, 2011 WL 1236135, at *1 n.2 (S.D.N.Y. Mar. 30, 2011) (declining to consider a "cross-motion" where plaintiffs requested relief via an opposition motion, without filing a notice of motion).

Accordingly, based upon the undisputed record and as a matter of law, the Court finds that it cannot grant any of the declaratory relief sought by Harleysville in this action with respect to the Harleysville Policy and Allstate Policy and thus denies its motion for summary judgment. Allstate's disclaimer of coverage was proper, as Allstate has no duty to defend and indemnify Kim and Cleaners in the Underlying Action; the Court thus grants Allstate's motion for summary judgment on its affirmative defenses. Absent a motion properly supported in fact and in law, the Court will not consider Kim's and Cleaner's request for reimbursement of costs and attorneys' fees incurred in defending this action.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court DENIES Harleysville's motion for summary judgment and GRANTS Allstate's motion for summary judgment (Docs. 28, 30). Harleysville's request for oral argument on the motions is DENIED as unnecessary. (Doc. 35).

The parties are directed to appear for a status conference to be held on May 20, 2021 at 11:30 a.m. by telephone. At the time of the scheduled conference, all parties shall call the following number: (888) 398-2342; access code 3456831.

The Clerk of Court is respectfully requested to terminate the pending motions (Docs. 28, 29, 30).

Dated: White Plains, New York
        March 22, 2021

SO ORDERED:

_____
Philip M. Halpern
United States District Judge

17